## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
## SOUTH BEND DIVISION

| | |
|---|---|
| LARON ROSS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:19 CV 1195 |
| | ) |
| ADVANCED CORRECTIONAL | ) |
| HEALTHCARE, LAPORTE COUNTY | ) |
| SHERIFF'S OFFICE, DEPUTY LOCKE, | ) |
| DEPUTY MURRY, DR. MICHAEL | ) |
| PERSON, and MARY MONTGOMERY, | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

NOW COME the Plaintiff, LARON ROSS, by and through counsel, SAMUELS & ASSOCIATES, LTD., and complaining of the defendants, ADVANCED CORRECTIONAL HEALTHCARE, LAPORTE COUNTY SHERIFF'S OFFICE, DEPUTY LOCKE, DEPUTY MURRY, DR. MICHAEL PERSON, and MARY MONTGOMERY, states as follows:

### INTRODUCTION

This is a civil action seeking damages against defendants for committing acts under color of law, and depriving Plaintiff of his rights secured by the Constitution and laws of the United States of America.

### JURISDICTION

1. This action is brought pursuant to the Civil Rights Act, 42 U.S.C. § 1983, and the Fourth and Fourteenth Amendments to the United States Constitution.

2. The jurisdiction of this Court is invoked pursuant to the judicial code 28 U.S.C. § 1331 and 1343 (a); and the Constitution of the United States.

## PARTIES

3. PLAINTIFF LARON ROSS is a citizen of the United States of America, who, at all times relevant, was a pretrial detainee at LaPorte County Jail in LaPorte County, Indiana.

4. DEFENDANTS DR. MICHAEL PERSON and MARY MONTGOMERY were, at the time of this occurrence, employees of Advanced Correctional Healthcare assigned to LaPorte County Jail. They were acting under color of law and within the scope of that employment. They are sued in their individual capacities.

5. DEFENDANT ADVANCED CORRECTIONAL HEALTHCARE ("Defendant ACH") is a foreign for-profit corporation with its principal place of business in Peoria, Illinois. ACH is the LaPorte County Jail's contracted medical healthcare provider. ACH is responsible for the recruitment, hiring, and supervision nurses within the Jail and, in 2018, they provided approximately 152 nursing hours and four (4) physician hours weekly at LaPorte County Jail with all medical staff leaving the Jail at 6pm.

6. DEFENDANTS DEPUTY LOCKE and MURRY were, at the time of this occurrence, duly licensed correctional officers with the LaPorte County Sheriff's Office who worked at LaPorte County Jail. They engaged in the conduct complained of in the course and scope of their employment and under color of law. They are sued in their individual capacities.

7. DEFENDANT LAPORTE COUNTY SHERIFF'S OFFICE ("Defendant Sheriff") is responsible for administering the Jail and for making, overseeing, and implementing the policies, procedures, practices and customs challenged herein relating to the operation of the Jail. Pursuant thereto, a jail deputy is assigned to the Medical Unit to provide additional security and conduct medical related transports.

## FACTS

8. At all times relevant, Plaintiff LaRon Ross was an inmate at LaPorte County Jail.

9. Upon his intake in or around July 31, 2018, he informed the staff that he had a history of seizures and required high blood pressure medication.

10. Despite multiple requests and suffering from the objectively serious medical conditions of high blood pressure and seizures, LaRon was never seen by the Jail's physician, Doctor Pearson.

11. LaRon was being given a lower dosage of his blood pressure medication than he required.

12. On or around September 14 2018, Plaintiff felt his blood pressure spiking and began feeling lightheaded.

13. Plaintiff told Nurse Montgomery and/or Deputy Murry and/or Deputy Locke his symptoms.

14. In Deputy Murry and/or Deputy Locke's presence, Nurse Montgomery took LaRon's blood pressure and saw that it was high. She then told LaRon to take his blood pressure medication and he should drink some water and lie down.

15. LaRon took his medication, drank a big glass of water, and went to lie down.

16. When LaRon got up, he was feeling even worse so Deputy Locke and/or Deputy Murry took him back to the nursing station.

17. There, Nurse Montgomery took his blood pressure and saw that it had was even higher despite having taken his medication.

18. Alarmed, Nurse Montgomery called Doctor Person who told her that he would deal with LaRon the next time he was at the Jail and to tell LaRon to go back to his cell.

19. Once there, LaRon suffered a seizure while he was lying down and began vomiting.

20. Upon the seizure's conclusion, he tried to call for emergency aid but was stricken by another seizure that caused him to hit his head on the floor.

21. Detainees from neighboring cells were eventually able to get the attention of jail staff and LaRon Ross was then rushed across the street to LaPorte County Hospital.

22. In total, he suffered 8 seizures that left him with weakness in his lower extremities, unable to control his own bladder, and slurred speech.

23. Plaintiff was hospitalized until 1 October when he was returned to LaPorte County Jail and placed in a "suicide cell".

24. There, he was not given proper follow-up care, including intensive physical therapy and speech therapy, that resulted in a worsening of his condition, including decreased sensation from his waist down.

25. Furthermore, he was forced to sit in his own sewage and was bathed irregularly, resulting in his room smelling constantly like waste with puddles of urine on his mattress and floor that went uncleaned for long periods of a time.

26. At all relevant times, LaPorte County jail's medical unit was understaffed and unable to deal with a patient such as LaRon who suffered from serious impairment.

27. As a result of multiple grievances, LaRon was transferred to Indianapolis so he could receive adequate treatment. In so doing, LaRon exhausted his administrative remedies.

28. With months of physical therapy, LaRon has regained sensation in his lower legs although he still requires assistance for extended locomotion.

29. As a direct and proximate result of the unlawful actions of the defendants, Plaintiffs were injured, including physical injuries, pain and suffering, humiliation, embarrassment, fear, emotional trauma, mental anguish, the deprivation of their constitutional rights and dignity, interference with a normal life, lost time, and attorneys' fees.

## COUNT I: 42 U.S.C. § 1983 – Denial of Medical Care

30. Plaintiff realleges each of the foregoing paragraphs as if fully set forth here.

31. As described more fully above, Defendants had notice of Plaintiff's objectively serious medical conditions.

32. Despite Defendants' notice, they failed to provide Plaintiff with necessary medical attention, in violation of the Fourth and Fourteenth Amendments of the Constitution of the United States.

33. As a result of the unjustified and unconstitutional conduct of Defendants, Plaintiff experienced pain, suffering, emotional distress, injury, scarring and disfigurement, and risked life-long impairment.

34. The misconduct of Defendants was objectively unreasonable and was undertaken intentionally with malice, willfulness, and reckless indifference to the rights of Plaintiff.

35. Alternatively, Defendants were deliberately indifferent to Plaintiff's objectively serious medical needs, and their acts were undertaken intentionally with malice, willfulness, and deliberate indifference to the rights of Plaintiff.

36. At all times relevant to the events at issue in this case, Defendant ACH contracted with Defendant Sheriff to provide healthcare to those housed at LaPorte County Jail, including LaRon.

37. Prior to the events giving rise to this Complaint, Defendants ACH and Sheriff had notice of widespread policies and practices by healthcare and correctional employees at LaPorte County Jail pursuant to which prisoners like LaRon with serious medical needs were routinely denied recommended medical care. It is common to see prisoners with clear symptoms of serious medical needs who repeatedly request medical evaluation or treatment and whose requests are

routinely delayed or completely ignored by healthcare and correctional employees.

38. Despite knowledge of these problematic policies and practices, Defendant ACH and Sheriff did nothing to ensure that prisoners at LaPorte received adequate medical care and access to medical care, thereby acting with deliberate indifference.

39. Specifically, there exist widespread policies or practices at LaPorte County Jail pursuant to which prisoners receive unconstitutionally inadequate healthcare including policies and practices pursuant to which:

    a. inadequate levels of health care staffing are maintained;

    b. healthcare personnel commonly fail to respond or respond inadequately to prisoners who have requested medical attention or proper treatment;

    c. healthcare personnel commonly fail to respond or respond inadequately to prisoners who exhibit obvious signs of a serious medical condition;

    d. healthcare personnel commonly fail to perform adequate examinations of prisoners with a serious medical condition;

    e. healthcare personnel commonly fail to review a prisoner's pertinent medical records before, during, or after an examination or diagnosis of the prisoner;

    f. healthcare personnel with inadequate training, qualifications, and experience are charged with the responsibility of screening and evaluating prisoner complaints and requests for medical care;

    g. healthcare personnel fail to provide timely healthcare to prisoners;

    h. healthcare personnel fail to respond adequately or timely to diagnostic testing which reveals a serious medical need; and

      i. healthcare personnel fail or refuse to arrange for prisoner to be treating in outside facilities, even when an outside referral is necessary or proper.

40. These widespread policies and practices were allowed to flourish because Defendants ACH and Sheriff, which directs the provision of healthcare services at the jail, directly encourage the very type of misconduct at issue in this case, failed to provide adequate training and supervision of healthcare and correctional employees, and failed to adequately punish and discipline prior instances of similar misconduct. In this way, Defendants ACH and Sheriff violated LaRon's rights by maintaining policies and practices that were the moving force during the foregoing constitutional violations.

41. The above-described widespread policies and practices, so well settled as to constitute de facto policy at LaPorte County Jail, were able to exist and thrive because Defendants ACH and Sheriff were deliberately indifferent to the problem, thereby effectively ratifying it.

42. At all times relevant to their involvement in this case, all Defendants were responsible for the creation, implementation, oversights and supervision of policies, practices, and procedures regarding medical care at LaPorte County Jail; the training of Deputies and healthcare staff at the jail on providing medical care to prisoners; and providing prisoners access to medical care; and the supervision of Deputies and healthcare staff at the jail who provided medical care and were responsible for providing prisoners access to medical care.

43. LaRon's injuries were caused by employees of Defendant Sheriff and ACH, including but not limited to the individually-named defendants, who acted pursuant to the foregoing policies and practices in engaging in the misconduct described in this Count.

44. As a direct and proximate result of the unconstitutional conduct of Defendants, Plaintiff was harmed including, but not limited to, severe pain, physical injury, mental suffering, anguish and humiliation, and loss of dignity.

WHEREFORE the Plaintiff, LARON ROSS, purusant to 42 U.S.C. §1983, demands judgment against the Defendants, ADVANCED CORRECTIONAL HEALTHCARE, LAPORTE COUNTY SHERIFF'S OFFICE, DEPUTY LOCKE, DEPUTY MURRY, MARY MONTGOMERY, and DR. PEARSON, for compensatory damages, punitive damages, the costs of this action and attorneys' fees, and any such other and further relief as this Court deems equitable and just.

**PLAINTIFF DEMANDS A TRIAL BY JURY.**

        Respectfully Submitted,

        **LARON ROSS**

    By:    s/ Jeanette Samuels
        *One of Plaintiff's Attorneys*

        Jeanette Samuels
        SAMUELS & ASSOCIATES, LTD.
        2925 S. Wabash Avenue, Suite 104
        Chicago, Illinois 60616
        T: 872-588-8726
        F: 872-444-3011
        E: sam@chicivilrights.com